IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MATRIX PT, LLC,**

    **Plaintiff,**

  v.                     CIVIL ACTION NO. 2:05cv662

**EVERGREEN ENTERPRISES, INC.,**

    **Defendant.**

*MEMORANDUM OPINION & ORDER*

This matter is before the Court on Defendant Evergreen Enterprises, Inc. ("Evergreen")'s Motion for Attorneys' Fees, Costs, and Expenses. Having carefully reviews the parties' pleadings, the Court finds this matter ripe for judicial determination. For the reasons below, Evergreen's motion is **DENIED**.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Matrix PT, LLC ("Matrix") is a Connecticut limited liability company with headquarters located in Annapolis, Maryland. Matrix is the owner of United States Patent 5,486,500 (filed Oct. 20, 1993) ("the '500 patent"). The '500 patent embodies an invention comprising a towel with one side mostly non-absorbent and printed with some sort of image and the other side more absorbent. Evergreen is a Virginia corporation with its principal place of

1

business in Richmond, Virginia. On March 9, 2005, Matrix wrote to Evergreen to communicate its belief that Evergreen was manufacturing and distributing a towel that infringed on the '500 patent. The parties followed up with a telephone conference discussing the letter, and then on March 29, 2005 Matrix sent Evergreen another letter explaining the basis for its infringement allegations.

Evergreen responded on April 8, 2005 by sending a letter to Matrix explaining its non-infringement position. The key patent claim at issue is '500 patent claim 1, which describes:

> A printed towel having two faces, a first face comprising a print receiving face which comprises at least about 65% of a relatively non-absorbent material able to receive printing by sublimation printing techniques, . . . and a second face comprising an absorbent material having a net moisture regain of at least about 3.5%.

U.S. Patent No. 5,486,500. Thus, the '500 patent describes a towel with a printed side being mostly non-absorbent and the second side being absorbent to the point of "having a net moisture regain of at least about 3.5%." *Id.* Evergreen's towel is composed entirely of polyester, which both parties admit to being generally non-absorbent. Therefore, Evergreen claims that its towel cannot meet the requirement in the '500 patent for having a second face with a net moisture regain "of at least about 3.5%."

Matrix obtained samples of Evergreen's towel and had them tested in a New York laboratory, and also got an infringement opinion from independent counsel. Based on the results obtained, Matrix filed the complaint in this action on November 8, 2005. Evergreen filed an answer on December 8, 2005. On May 15, 2006, Evergreen filed a motion to strike expert disclosure and to exclude expert testimony. After receiving information through discovery, Matrix concluded that any prospective royalties resulting from this action would not be enough to

justify continuing the case. Therefore, on May 18, 2006, Matrix filed a motion to dismiss its case with prejudice. On May 19, 2006, Matrix filed its own motion to strike expert disclosure and exclude expert testimony. On June 2, 2006, the Court ordered that the case be dismissed with prejudice.

On June 19, 2006, Evergreen filed the instant motion for attorney fees, costs, and expenses, seeking $110,306.47. Matrix filed its opposition on June 28, 2006. Evergreen filed a reply on July 6, 2006.

## II. LEGAL STANDARD

**A.  Attorney Fees Standard under Title 35 U.S.C. § 285**

Evergreen first argues that it should be awarded attorney fees under 35 U.S.C. § 285 (2000). This patent statute provides that, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Evergreen is the prevailing party in this litigation because the claims against it were dismissed with prejudice and, "The dismissal of a claim with prejudice . . . is a judgment on the merits under the law of the Federal Circuit." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004).

The Federal Circuit has held that, "The determination of whether a case is exceptional and, thus, eligible for an award of attorney fees under § 285 is a two-step process." *Cyber Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998). "First, the district court must determine whether a case is exceptional, a factual determination reviewed for clear error." *Id.* "After determining that a case is exceptional, the district court must determine whether attorney fees are appropriate, a determination that we review for an abuse of discretion." *Id.*

The prevailing party has the burden to prove an exceptional case by clear and convincing evidence. *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1380 (Fed. Cir. 2005). This burden may be met by showing "inequitable conduct before the [Patent and Trademark Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002). The Federal Circuit has held that awards of attorney fees under § 285 are appropriate only in "limited circumstances." *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003). With regard to awards in favor of accused infringers, "sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Moreover, "There is a presumption that the assertion of infringement of a duly granted patent is made in good faith." *Id.* at 1382.

**B. Attorney Fees, Costs, and Expenses Standard under Title 28 U.S.C. § 1927**

Evergreen also argues that it should receive attorney fees under 28 U.S.C. § 1927 (2000). This section provides that, "Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Supreme Court has stated that this statute "is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). The Fourth Circuit has stated that, "[A]n attorney who files a meritorious claim and wins . . . may still be assessed sanctions under § 1927 if, during the case, he "multiplies

the proceedings . . . unreasonably and vexatiously." Likewise, an attorney who files a meritless claim may not be sanctioned under § 1927 if he does not engage in such conduct." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999).

### C. Attorney Fees Standard under Inherent Authority

Finally, Evergreen argues that the Court has the inherent authority to award attorneys' fees "when a party has ''acted in bad faith, vexatiously, wantonly, or for oppressive reasons''" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-56 (1991) (quoting *Alyeska Pipeline Servs. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (quoting *F.D. Rich Co. v. United States*, 417 U.S. 116, 129 (1974))). A court can find "bad faith" so as to support an award of attorney fees in both the filing and conduct of litigation. *Roadway Express*, 447 U.S. at 766.

### III. DISCUSSION

### A. Analysis of Attorney Fees under Title 35 U.S.C. § 285

Evergreen contends that this is an exceptional case that warrants an award of attorney fees under 35 U.S.C. § 285. Evergreen argues that Matrix knew or should have known before filing the complaint that Evergreen's towel did not infringe the '500 patent. Evergreen states that before filing, Matrix knew Evergreen's towel was made of 100% polyester, a non-absorbent material, and thus could not possibly infringe on the '500 patent claim that requires the non-printed side of the towel to have "a net moisture regain of at least about 3.5%." U.S. Patent No. 5,486,500. Evergreen further argues that Matrix's pre-filing tests tended to show that Evergreen's towel did not meet the 3.5% requirement and that Matrix's pre-filing infringement opinion did not properly analyze the net moisture regain factor. Finally, Evergreen argues that Matrix's conduct during the case, particularly

5

an alleged failure to provide adequate expert disclosures and the filing of a motion to strike one day after filing a motion to dismiss, demonstrates bad faith and a "quit-before-losing" strategy.

A frivolous suit can be "exceptional" under § 285. *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993). "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless." *Id.* The Federal Circuit's interpretation of the claim at issue in *Haynes* is instructive for the present case. In *Haynes*, the central issue was whether an accused infringing alloy met the limitations of the claim in question, which required "about 22 chromium." *Id.* at 1576, 1580. The Federal Circuit held that, "The use of the term *about* in the claim . . . permits some leeway in the required chromium content." *Id.* at 1580. The alleged infringer's alloy had a chromium content of between 20.74 and 20.81%. *Id.* at 1576. The Federal Circuit held that the district court had abused its discretion in awarding attorney fees. *Id.* at 1580. The use of "about" in the claim meant that the percentage material requirement in the claim was not a mandatory cut-off.

The instant case involves an allegation that Evergreen's towel infringed a claim that requires "a net moisture regain of at least *about* 3.5%." U.S. Patent No. 5,486,500 (emphasis added). Therefore, like *Haynes*, the claim at issue in this case permits some leeway. Matrix admits that the polyester that totally composes Evergreen's towel is generally non-absorbent, but argues it is possible that a *generally* non-absorbent material may still meet the requirements of the claim. Matrix initiated contact with Evergreen concerning possible infringement in March 2005, and did not file a complaint until November 2005. In the meantime, Matrix conducted tests on Evergreen's towel and obtained an independent infringement opinion.

Matrix's pre-filing tests, while not specifically addressing net moisture regain, did test absorbency. Matrix's independent infringement opinion was at a loss as to the precise meaning of the term "net moisture regain" and therefore used a brief definition found in the specification. The specification defines moisture regain as "the amount of moisture absorbed into the material at 21° C and 65% relative humidity." U.S. Patent No. 5,486,500. The preliminary tests, performed at the required temperature and humidity, showed an absorbency of 26.6% on the face and 36.6% on the back. The opinion erroneously took the 26.6% figure and compared it to the 3.5% net moisture regain limitation, concluding that there was a case for infringement. The opinion was incorrect both for comparing absorbency to moisture regain and for using the absorbency number for the printed face of the towel as opposed to that for the side in question, the back. However, the error in the definition of net moisture regain can be traced to the lack of a more specific definition in the patent itself, and the error in comparing the incorrect side of the towel is inconsequential since the back of the towel is more absorbent than the face.

In addition to the tests and opinion, Matrix notes that Evergreen's towel was marketed as "highly absorbent" and was being sold under the trademark "Microsorb." It certainly would have been preferable if Matrix had ascertained the true meaning of "net moisture regain" and performed more appropriate tests, but the investigation Matrix did perform precludes a finding that the complaint was filed in bad faith. *Enpat, Inc. v. Microsoft Corp*, 26 F. Supp. 2d 811 (E.D. Va. 1998), is instructive as to the type of pre-filing investigation required. The court in *Enpat* held that two claims were frivolous when the patentee could not say whether *any* pre-filing investigation had been done on one claim and the patentee's own patent listed the accused product as prior art for the other claim. *Id.* at 813-14. On the other hand, the *Enpat* court held that when the patentee downloaded

the accused product and looked at it, the " investigation . . . , while cursory, cannot be said to be so non-existent as to single-handedly justify an award of attorneys' fees in this case." *Id.* at 814. Matrix's investigation in this case was flawed for not precisely testing net moisture regain, but the steps taken before filing the complaint were sufficient to avoid the exceptional case label.

Evergreen further contends that this case is exceptional due to Matrix's continued prosecution of the case after more precise net moisture regain tests showed non-infringement. Evergreen's testing showed net moisture regain levels under 1%. Matrix's testing subsequent to filing showed net moisture regain levels in excess of 3.5% in two of twelve tests. In addition, another of the tests showed a level above 3%, and two more showed levels above 2%. Matrix notes that the test used to determine net moisture regain at the time the '500 patent was filed has been discontinued because it uses a banned chemical, and that in any event there is more than one process for determining net moisture regain. Matrix set up a telephone conference between the parties' testing experts to discuss the discrepancy, but no conclusions were reached. Given this expert conflict, plus the fact discussed above that the patent claim at issue includes "about" language, Matrix's continued prosecution of the case was not inappropriate. In conclusion, this is not an exceptional case under 35 U.S.C. § 285, so there is no need to decide whether attorney fees are warranted.

**B. Analysis of Attorney Fees, Costs, and Expenses under Title 28 U.S.C. § 1927**

Evergreen argues that it should be awarded attorney fees, costs, and expenses under 28 U.S.C. § 1927 because Matrix unreasonably and vexatiously multiplied the litigation. Evergreen alleges that Matrix did not cooperate during discovery and filed a motion to strike after it had filed a motion to dismiss, thus requiring Evergreen to respond to the motion to strike even though

dismissal was pending. However, this case contains relatively few docket entries. Matrix notes that there were no depositions, motions for dismissal or summary judgment, or motions to resolve discovery disputes. The only substantive motions filed after the complaint, other than the motion to dismiss and the instant motion for attorney fees and costs, were the parties' respective motions to strike expert disclosures. Matrix filed a motion to strike after it had filed the motion to dismiss because the time limit for objecting to Evergreen's experts was running and the Court had not yet ruled on the motion to dismiss. Furthermore, Matrix moved to dismiss when it discovered that any possible recovery did not justify continuing to prosecute the case. Evergreen cannot show that Matrix's conduct was unreasonable or vexatious so as to justify an award under 28 U.S.C. § 1927.

**C. Analysis of Attorney Fees under Inherent Authority**

Evergreen's final argument is that the Court should use its inherent authority to sanction in order to be awarded fees and costs. *See Chambers*, 501 U.S. at 45-56. However, courts should only rely on inherent authority when " when misconduct remains unremedied by [statutes and rules]." *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 379 (Fed. Cir. 1994). Courts are to assess attorney fees against responsible parties when there is a finding of fraud or bad faith. *Chambers*, 501 U.S. at 46. As discussed above, Matrix did not engage in bad faith filing or prosecution. Matrix did not commit any fraud on the court. Therefore, any use of inherent authority to sanction Matrix is not warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Evergreen's Motion for Attorneys' Fees, Costs, and Expenses.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
Raymond A. Jackson
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 12, 2006